IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

CORY L. WILSON,                          )
                                         )
              Plaintiff,                 )
                                         )
v.                                       )        Civil Action No. 1:25-cv-01127 (AJT/WEF)
                                         )
EUGEN EFRIM, *et al*.,                   )
                                         )
              Defendants.                )

## MEMORANDUM OPINION AND ORDER

In this personal injury action, Defendants Amazon.com Services, Inc. and Amazon Logistics (the "Amazon Defendants") have filed a Motion to Dismiss Plaintiff's First Amended Complaint, [Doc. No. 38] (the "Motion"). The Court held a hearing on the Motion on December 17, 2025, following which it took the Motion under advisement. Upon consideration of the Motion, the memoranda in support thereof [Doc. Nos. 38, 48], and in opposition thereto [Doc. No. 45], the argument of counsel at the hearing, and for the reasons stated herein, Defendant's Motion is DENIED.

## I.    BACKGROUND[1]

In the Amended Complaint, Plaintiff Wilson alleges the following:

On September 9, 2023, while Plaintiff Cory Wilson ("Wilson") was operating a 2003 Mack dump truck in the rightmost lane on Interstate 95 South, Defendant Eugen Efrim ("Efrim"), as an employee of Defendant Davutrans, Inc. ("Davutrans"), a federally licensed motor carrier

---

[1] Plaintiff Cory Wilson filed his original Complaint in the Circuit Court for the County of Prince William on May 30, 2025 naming Davutrans, Inc. and its employee Eugen Efrim as defendants. [Doc. No. 1-2]. Defendants Davutrans and Efrim removed the action to this Court based on this Court's diversity jurisdiction, 28 U.S.C. 1332(a). [Doc. No. 1]. On September 24, 2025, Plaintiff filed, with leave of the Court, an Amended Complaint, in which he named the Amazon Defendants as additional defendants, [Doc. No. 14], which Plaintiff served on October 14, 2025. On October 8, 2025, Defendant Davutrans filed an Answer to the Amended Complaint, [Doc. No. 18], and on November 18, 2025, the Amazon Defendants filed the Motion.

company, was driving a 2017 Freightliner Cascadia in the middle lane and swerved into Plaintiff

Wilson's lane and crashed into the rear of his vehicle, injuring Plaintiff. [Doc. No. 14] ¶¶ 5–7, 44.

Plaintiff alleges that Efrim was negligent in operating the vehicle or in the alternative, the 2017

Freightliner Cascadia driven by Efrim was in a defective condition because the front tire suffered

a blow out, which would have been prevented had the vehicle been properly inspected in

accordance with the guidelines of the Federal Motor Carriers Safety Administration. *Id.* ¶¶ 8–27.

Plaintiff also alleges that although Efrim is an employee of Davutrans, but not Amazon, there was

"create[ed] an employer/employee relationship" between Efrim and Amazon because Efrim

exclusively transported Amazon goods, including at the time of the accident, and Efrim was acting

"within the course and scope of his employment with Davutrans and Amazon Defendants." *Id.* ¶¶

28*,* 39, 46. In further support of that claim, Plaintiff alleges that Efrim was required to use

Amazon's relay application to effectuate the deliveries and failing to do so would result in reduced

deliveries for Amazon or cancellation of Davutrans' account with the Amazon Defendants. *Id.* ¶¶

30–39. In their Motion, the Amazon defendants seek to have this action dismissed as to them on

the grounds that Plaintiff's claims are preempted by the Federal Aviation Administration

Authorization Act ("FAAAA"). [Doc. No. 38].[2]

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This showing does

---

[2] Amazon Defendants additionally argue that Amazon Logistics, Inc., the shipper in this action, is the only Amazon entity that should be named because Amazon.com Services, LLC, is a wholly separate entity that has no relation to Amazon Logistics, Inc. *See* [Doc. No. 38] at 3 n.1. The resolution of that issue is not appropriate within the context of the Motion.

not require detailed allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quoting *Twombly*, 550 U.S. at 555).

## III.   DISCUSSION

In the Motion, the Amazon Defendants do not challenge that Plaintiff has plausibly alleged a negligence claim against them under Virginia law. Rather, they contend that the FAAAA preempts Plaintiff's negligence claim against them.

The FAAAA prohibits states from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . [or] . . . broker, . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1).[3] The FAAAA defines a motor carrier as "a person providing motor vehicle transportation for compensation," *id.* § 13102(14); a broker as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation," *id.* § 13102(2); and "transportation" to include "services related to" "the movement of . . . property," "including arranging for, receipt, delivery, elevation, transfer in transit, . . . and interchange of . . . property," *id.* § 13102(23). The Act includes a "safety exception" that provides that the statute's express preemption provision in § 14501(c)(1) "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." *Id.* § 14501(c)(2)(A). Thus, to resolve Defendants' Motion to Dismiss, the Court must first consider whether § 14501(c)(1) preempts Plaintiff's state law negligence claims and, if so, whether such claims fall within the safety exception in § 14501(c)(2)(A).

---

[3] The FAAAA also expressly preempts any state from enacting or enforcing "any law, rule, regulation, standard, or other provision having the force and effect of law relating to intrastate rates, intrastate routes, or intrastate services of any freight forwarder or broker." 49 U.S.C. § 14501 (b)(1). For the purposes of the Motion, the parties rely on the effect of § 14501(c)(1).

A. Whether § 14501(c)(1) preempts Plaintiff's state law negligence claim.

Plaintiff contends that FAAAA preemption does not apply to his negligence claim for two reasons. First, Plaintiff's negligence claim is not, as required under § 14501(c)(1), "related to a price, route, or service of any motor carrier . . . [or] . . . broker, . . . with respect to the transportation of property." [Doc. No. 45] at 4–6. Second, even if preemption applies to his negligence claim under § 14501(c)(1), preemption is nevertheless avoided by the "safety exception" in § 14501(c)(2)(A). *Id.* at 7–9. The Amazon defendants contend that § 14501(c)(1) does apply to them because even though they would reasonably be understood to be a "shipper," they nevertheless are within the definition of a "broker" relative to Davutrans, and Plaintiff's negligence claim is "related to a price, route, or service . . . with respect to the transportation of property" and outside the scope of the "safety exception." *See* [Doc. No. 38].

The Amazon Defendants are in effect alleged to have arranged for the transportation of its goods by a motor carrier (Davutrans); and given the definition of a "broker" as a "person . . . that as a principal or agent . . . holds itself out by solicitation, advertisement, or otherwise as . . . *arranging for, transportation by motor carrier* for compensation," 49 U.S.C. § 13102(2), the Amazon Defendants fall within the definition of a "broker" and therefore within the scope of §14501(c)'s preemption.[4]

In assessing whether Plaintiff's negligence claim is sufficiently "related to a price, route, or service," the FAAAA embraces state laws that have a direct or indirect connection with or reference to rates, routes, or services. *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1022 (9th Cir. 2020). The central focus is on the economic impact enforcement of those claims

---

[4] As the Amazon defendants point out, other courts have concluded that the FAAAA applies to businesses similar to that of the Amazon defendants. *See, e.g.*, *Pinder v. Lancer Ins. Co.*, 2024 U.S. Dist. LEXIS 176253, at *1 (M.D. Ga. 2024) (dismissing claims against Walmart, acting as a shipper, as preempted under FAAAA).

would have on broker services or how important the broker's selection of motor carriers is to its core business. *See, e.g., Ye v. GlobalTranz Enters., Inc.*, 74 F.4th 453, 459 (7th Cir. 2023), *cert. denied,* 144 S. Ct. 564, 217 L. Ed. 2d 301 (2024) (finding state law expressly preempted because plaintiff's negligent hiring claim struck at "the core" of broker's services of arranging for transportation and enforcement of such a claim "would have a significant economic effect on broker services"); *Miller*, 976 F.3d at 1022 (interpreting "related to" in the FAAAA to "embrace[] state laws having a connection with or reference to rates, routes, or services, whether directly or indirectly"). Here, Amazon is an e-commerce company whose core line of business is to sell goods through its online platform that then get delivered to customers. The Amazon defendants contracted with Davutrans to deliver those goods to its customers; and Plaintiff's claim that Amazon negligently selected its motor carrier to deliver its goods seeks to interfere with a core part of Amazon's services and is thus directly connected to bring the claim within the purview of the FAAAA's preemption provision. *See Miller*, 976 F.3d at 1023 ("[A] claim that imposes an obligation on brokers at the point at which they arrange for transportation by motor carrier has a 'connection with' broker services.").

For the above reasons, Plaintiff's claim falls within the scope of §14501(c)(1) preemption and the issue then becomes whether it is taken out of that coverage through the "safety exception" in §14501(c)(2)(A).

B. Whether the "safety exception" in 49 U.S.C. §14501(c)(2)(A) applies to Plaintiff's negligence claim.

Notwithstanding the application of the FAAAA's preemption provision, Plaintiff's negligence claim can be saved from preemption if it is within the scope of Virginia's "safety regulatory authority . . . with respect to motor vehicles." 49 U.S.C. § 14501(c)(2)(A). The FAAAA does not expressly define the term "safety regulatory authority of a State."

The Fourth Circuit has not addressed whether common law negligence claims, such as those Plaintiff asserts here, are within the scope of § 14501(c)(2)(A), and there is a circuit split on this issue, with the Ninth and Sixth circuits holding that state law negligence claims are shielded from preemption by way of the safety exception,[5] and the Seventh and Eleventh circuits holding that the safety exception does not preserve common-law negligence claims against brokers.[6] And the Supreme Court has granted a petition for certiorari on the issue.[7]

Reflecting the reasoning of those courts that have concluded common law negligence hiring claims are not within the "safety exception," the Amazon Defendants argue that Plaintiff's claims of negligent supervision and negligent hiring are not directly linked to motor vehicle safety. [Doc. No. 38] at 15–20. Relying principally on *Ye*, the Amazon Defendants argue that the phrase "with respect to motor vehicles" in the statute's safety exception requires there to be a direct connection between the negligence claim and motor vehicles; and given that Amazon contracted with a motor carrier, Defendant Davutrans, to transport goods, Plaintiff's negligent claim has too tangential or remote connection to motor vehicles. [Doc. No. 38] at 17. As the Amazon defendants see it, allowing "claims with such a 'tangential connection' to motor vehicles [to] fall into the safety exception would 'swallow the preemption provision whole.'" *Id.*

In *Cox v. Total Quality Logistics*, the Sixth Circuit, in finding that the plaintiff's negligence claims fell within the ambit of the FAAAA's safety exception and were therefore not preempted,

---

[5] *See Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1025–26 (9th Cir. 2020) (holding that while "there is no question that common-law claims are within the scope of the preemption clause," the safety exclusion controlled because "'the safety regulatory authority of a State' encompasses common-law tort claims"); *Cox v. Total Quality Logistics, Inc.*, 142 F.4th 847 (6th Cir. 2025) (finding state law negligence claims are saved by the safety exception in the FAAAA).

[6] *See Ye v. GlobalTranz Enterprises, Inc.*, 74 F.4th 453, 460 (7th Cir. 2023) (finding that safety exclusion did not apply because "only those laws with a direct link to motor vehicles fall within a state's 'safety regulatory authority . . . with respect to motor vehicles.'"); *Gauthier v. Hard to Stop LLC*, No. 22-10774, 2024 WL 3338944 (11th Cir. July 9, 2024) (finding state law negligence claims are preempted by the FAAAA and are not saved by the safety exception).

[7] *Montgomery v. Caribe Transp. II, LLC*, 222 L. Ed. 2d 1241 (Oct. 3, 2025) (question presented is whether FAAAA preempts state common law claims against freight brokers for the negligent selection of motor carriers or drivers).

reasoned that "the crux of the alleged negligent conduct is that [the broker] failed to exercise reasonable care in selecting a safe motor carrier to operate a motor vehicle on the highway, resulting in a vehicular accident that killed [the plaintiff]." 142 F.4th 847, 856 (6th Cir. 2025). The Sixth Circuit viewed Plaintiff's negligent hiring claims as an "enforce[ment] [of] a standard of care on brokers which, in turn, requires brokers to do their due diligence in ensuring that they are hiring safe motor carriers." *Id.* Allowing the enforcement of such common law claims are "therefore, 'genuinely responsive to safety concerns'" and are part of the "safety regulatory authority of a State." *Id.* at 854; *Miller*, 976 F.3d 1016, 1025–31 (9th Cir. 2020) (construing "the safety regulatory authority of a State" to encompass negligence claims). The Sixth Circuit therefore concluded that enforcement of plaintiff's negligence claims necessarily invoked the exercise of the "state's regulatory authority 'with respect to,' or concerning, 'motor vehicles.'" *Id.* at 854–58 (rejecting argument that safety exception requires a direct connection to motor vehicles).

As in *Cox*, Plaintiff alleges that the Amazon Defendants negligently selected Davutrans to ship its goods, resulting in a vehicular accident that injured Plaintiff. That theory of liability "comports with the FAAAA's recognition that motor vehicles are core to the services provided by brokers, as well as the basic reality that brokers are ultimately responsible for placing such motor vehicles on the road, even if those motor vehicles are driven and owned by a different entity." *Id.* at 858. As discussed above, the FAAAA defines a broker broadly and even assuming that a "direct link" with motor vehicles is required as the Amazon defendants contend, such a direct link exists within the context of Plaintiff's negligence claim, which invariably concerns motor vehicle safety. That the Amazon Defendants are, as they argue, "one step removed" from motor vehicles because it merely "contract[s] with a motor carrier for that carrier to provide services," [Doc. No. 38] at

17, does not preclude the application of the safety exception when a core component of Amazon's business is to arrange for the carriage of goods *by motor vehicles*. *See Ortiz v. Ben Strong Trucking, Inc.*, 624 F. Supp. 3d 567, 584 (D. Md. 2022) (finding that safety exception reaches "regulations that are genuinely responsive to the safety of other vehicles and individuals").

As other courts have recognized, the FAAAA's broader purpose is to prevent a state from "substituting its own governmental commands for competitive market forces in determining (to a significant degree) the services that brokers and motor carriers will provide—not to grant brokers immunity from all liability for harm caused by their negligence." *Vitek v. Freightquote.com, Inc.*, 2020 WL 1986427, at *4 (D. Md. Apr. 27, 2020) (cleaned up) (enforcing a common law duty of care against a broker can be expected to impact the way brokers provide their services in at most a "tenuous, remote, or peripheral manner"). And as the Ninth Circuit has observed, "Congress was primarily concerned with the States regulating *economic* aspects of the trucking industry by, for example, enacting tariffs, price regulations, and other similar laws" and its "clear purpose in enacting the safety exception, then, was to ensure that its preemption of States' economic authority over that industry not restrict the States' existing power over safety." *Miller*, 976 F.3d at 1026 (reviewing legislative history of FAAAA and finding nothing to suggest Congress intended to eliminate the states' power over safety). Even courts that have found negligence claims outside of the "safety exception" have recognized that state laws can fall within that exception even if their recognition would burden interstate commerce. *See Ye*, 74 F.4th at 458 (the FAAA "made a specific carveout for laws within a state's 'safety regulatory authority with respect to motor vehicles,' even though such laws may burden interstate commerce").

For the above reasons, the Plaintiff's negligence claim against the Amazon defendants falls within the scope of the "the safety regulatory authority of a State with respect to motor

vehicles," 49 U.S.C. §14501(c)(2)(A), and is therefore not preempted under 49 U.S.C §14501(c)(1).

### IV.    CONCLUSION

For the reasons stated above, it is hereby

**ORDERED** that the Defendant's Motion to Dismiss the Amended Complaint, [Doc. No. 38], be, and the same thereby, is DENIED.

January 2, 2026
Alexandria, Virginia

Anthony J. Trenga
United States District Judge